UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PRUDENCE BUSHNELL, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> THE ISLAMIC EMIRATE OF AFGHANISTAN, *et al.*, <br><br> Defendants. | No. 22-CV-8901-JSR |

**MOTION FOR LEAVE TO FILE *AMICUS CURIAE* BRIEF**

Judgment Creditors Fiona Havlish, *et al.*, John Does 1 through 7, Federal Insurance Co., *et al.*, and Estate of Smith, *et al.*—collectively, the "Joint Taliban Creditors" or "proposed *amici*"—hereby respectfully move this Court for leave to file the accompanying brief, attached hereto as Exhibit A, as *amici curiae*.

**PRELIMINARY STATEMENT**

Proposed *amici* are victims of terrorism who hold final judgments against the Taliban for several billion dollars in compensatory damages due to either the September 11 attacks or a separate Taliban bombing.[1] In 2021, they initiated enforcement proceedings before the September 11 MDL court (Daniels, J., and Netburn, M.J.,), seeking orders compelling the Federal Reserve Bank of New York to turn over the $3.5 billion it holds in the blocked assets of Da Afghanistan Bank ("DAB" and the "DAB assets"). The Joint Taliban Creditors' turnover motions argued that,

---

[1] *See In re Terrorist Attacks on September 11, 2001*, No. 03-MD-1570-GBD-SN (S.D.N.Y.). Docket entries for the September 11 MDL are hereinafter styled "MDL Dkt." Proposed *amici* are the plaintiffs in the following individual cases within the MDL: *Havlish v. Bin Laden*, 03-cv-9848 (S.D.N.Y.); *John Does 1 through 7 v. the Taliban*, 20-mc-740 (S.D.N.Y.); *Federal Insurance Co. v. al Qaida*, 03-cv-6978 (S.D.N.Y.); *Smith v. Islamic Emirate*, No. 01-CV-10132 (S.D.N.Y.).

1

pursuant to Section 201 of the Terrorism Risk Insurance Act of 2002 ("TRIA"),[2] they are entitled to satisfy their judgments against the Taliban by executing on the blocked assets of DAB, which is an instrumentality of the Taliban. Judge Daniels' denial of those motions is now on appeal before the Second Circuit.[3]

The Joint Taliban Creditors seek leave to file the accompanying brief in this action as *amici curiae* to provide analysis concerning several issues pertaining to the Foreign Sovereign Immunities Act ("FSIA") which bear on the Court's subject matter jurisdiction. We believe these issues must be considered in connection with the pending application for default judgments.

As the attached proposed brief explains, Plaintiffs in the action before this Court (the "Bushnell Plaintiffs") have initiated *in personam* actions against DAB, which according to the United States is the central bank of Afghanistan and an agency or instrumentality of the state of Afghanistan, as well as (apparently) against the Afghan state itself. To the extent the Bushnell Plaintiffs are proceeding against a foreign state and its central bank, those defendants are presumptively immune from jurisdiction under the FSIA, unless a statutory exception applies. In light of the facts that (1) Defendants have not appeared, and (2) the Bushnell Plaintiffs' filings to date have not addressed potential application of the FSIA to their lawsuit against Afghanistan and DAB, proposed *amici*'s filing may assist the Court in addressing the default judgment application.

---

[2] Pub. L. No. 107-297, 116 Stat. 2322, 2337-2340, as amended, Pub. L. No. 112-158, 126 Stat. 1260 (codified at 28 U.S.C. § 1610 note) ("Notwithstanding any other provision of law, and except as provided in subsection (b), in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under [28 U.S.C. § 1605(a)(7)], the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.").

[3] *See Havlish v. Bin-Laden*, No. 23-258 (2d Cir.); *John Does 1 through 7 v. the Taliban*, No. 23-263 (2d Cir.); *Federal Insurance Co. v. Al-Qaida*, No. 23-346 (2d Cir.); *Smith v. Islamic Emirate of Afghanistan*, No. 23-304 (2d Cir.).

This action affects proposed *amici*'s interests. The Bushnell Plaintiffs are victims of al Qaeda's 1998 embassy bombings in Kenya and Tanzania. Their suit appears to have been filed in significant part so that they could obtain a judgment and thereafter execute against the blocked DAB assets that are already the subject of proposed *amici*'s judgment enforcement effort. Last year, a subset of the Bushnell Plaintiffs unsuccessfully moved to intervene in the MDL turnover proceedings. *See* MDL Dkt. 7696.[4] Several months after Magistrate Judge Netburn denied that motion, the Bushnell Plaintiffs initiated the instant action, seeking a liability judgment against Da Afghanistan Bank and specifically referencing the $3.5 billion in blocked DAB assets that are the subject of the MDL turnover proceedings. *See* Compl., ECF 1, ¶ 111. Although the Bushnell Plaintiffs have been litigating the embassy bombings for decades, *see id*. ¶¶ 2, 15, they did not bring claims against Afghanistan, the Taliban, and DAB until October 2022—24 years after the attacks—and only after the Joint Taliban Creditors had begun execution proceedings against the blocked DAB assets.

In short, this action is directed at the DAB assets. Because the Bushnell Plaintiffs seek a judgment that would, at the very least, complicate the Joint Taliban Creditors' own pursuit of the DAB assets should they prevail in the Second Circuit, proposed *amici* have an interest in this action. Proposed *amici* seek to avoid a scenario in which the Bushnell Plaintiffs might obtain a judgment whose validity would later, in judgment enforcement proceedings, prove unenforceable due to failure to comply with the FSIA. Despite being unenforceable, such a judgment could muddle enforcement of *amici's* judgments.

---

[4] There are over 5,000 Plaintiffs in this action. Six hundred of them—the "Amduso Plaintiffs"—were proposed intervenors in the MDL. The Amduso Plaintiffs were represented by substantially the same counsel on their intervention motion as the Plaintiffs are in this action.

To be clear, the Joint Taliban Creditors fully support the Bushnell Plaintiffs' efforts to pursue accountability and compensation for heinous acts of terrorism. The Joint Taliban Creditors are not asking to intervene in this action; they merely seek to ensure, given Defendants' nonappearance, that the Court has before it briefing on issues involving foreign sovereign immunity and subject matter jurisdiction.

## ARGUMENT

Proposed *amici* should be granted leave to submit the accompanying brief, attached hereto as Exhibit A, which addresses issues pertaining to the Court's subject matter jurisdiction that the parties themselves have not addressed.

District courts have broad discretion in deciding whether to accept an *amicus* brief. *See City of New York v. United States*, 971 F. Supp. 789, 791, n.3 (S.D.N.Y. 1997); *Lehman XS Tr., Series 2006-GP2 v. Greenpoint Mortg. Funding, Inc.*, No. 12-CV-7935, 2014 WL 265784, at *1 (S.D.N.Y. Jan. 23, 2014) (citation omitted) ("There is no governing standard, rule or statute prescribing the procedure for obtaining leave to file an *amicus* brief in the district court," and deciding whether to permit an individual to act as *amicus curiae* lies in the "firm discretion" of the court.).

As this Court noted in the *Yaroshenko* case, an *amicus* submission is most appropriate when the parties to the litigation have not addressed or analyzed important issues before the Court. *See United States v. Yaroshenko*, 86 F. Supp. 3d 289, 290–91 (S.D.N.Y. 2015) (Rakoff, J.) ("An amicus curiae proves true to its name as a 'friend of the court' when it offers a fresh perspective on an unsettled question of law that the actual parties to the litigation have not fully addressed."). For that reason, courts regularly accept *amicus* submissions when the parties are not represented, or not adequately represented, by counsel. *See Best Payphones, Inc. v. Dobrin*, 410

F. Supp. 3d 457, 466 n.3 (E.D.N.Y. 2019) (citations omitted) ("An *amicus* brief should normally be allowed when a party is not represented competently or is not represented at all, when the *amicus* has an interest in some other case that may be affected by the decision in the present case . . . or when the *amicus* has unique information or perspective that can help the court beyond the help that lawyers for the parties are able to provide."); Order at 2, *23-34 94th St. Grocery Corp. v. New York City Bd. Of Health*, No. 10-cv-4392-JSR (S.D.N.Y. Aug. 11, 2010), ECF 45 (Rakoff, J.) (in light of a "glaring disparity in the parties' legal resources," finding that "a modest participation by *amici* is not inappropriate and may well prove helpful to the Court"). These principles are relevant here, where Defendants have not appeared, and are unlikely to do so given their defaults in prior similar proceedings, such that jurisdictional issues may not be raised.

*Amicus* briefing on FSIA issues—which the Bushnell Plaintiffs have not mentioned in any of their previous submissions—is important given the Court's independent obligation to assess jurisdiction, including before granting a motion for default judgment. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 125-126 (2d Cir. 2011). The FSIA, when it applies, withdraws subject matter jurisdiction over *in personam* actions against foreign states, including their agencies and instrumentalities such as central banks. *See* 28 U.S.C. §§ 1603(a), 1604; *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) ("Under the Act, a foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state."). Further, the FSIA imposes a higher evidentiary burden when a party seeks a default judgment against a foreign sovereign. *See* 28 U.S.C. § 1608(e) ("No judgment by default shall be entered by a court of the United States or of a State against a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by

5

evidence satisfactory to the court."). The attached *amicus* brief may assist the Court as it undertakes this analysis.

The case of *Weininger v. Castro* is instructive. In that case, Judge Marrero granted leave to the Cuban Electric Company (CEC), a third party with a judgment against the Government of Cuba, to file an *amicus* brief arguing that the Weininger Plaintiffs' underlying judgments against non-appearing Cuban sovereign defendants were void under the FSIA. *See* Decision and Order, *Weininger v. Castro*, No. 05-CV-7214-VM (S.D.N.Y. March 2, 2006), Dkt. 139. The plaintiffs opposed CEC's motion, arguing in part that it was improper for a third party to "step[] into the shoes of the defaulted and absent defendants (*i.e.*, the Republic of Cuba and its agencies and instrumentalities)." *Weininger* Dkt. 136 at 10.

Judge Marrero rejected these arguments and accepted the *amicus* submission, finding that the defendants' absence from the case heightened the value of receiving the brief:

> The underlying issues are exceptionally complex, implicating difficult questions of international law and of United States foreign policy that are matters likely to engender reasonable expressions of public interest from a universe much larger than the adversaries in the instant action. That the judgments Plaintiffs obtained against Cuba were rendered by default, and that the government of Cuba has not appeared in the instant proceeding, serve to further complicate the matter at hand, insofar as the position and interests of critical parties to this controversy have not been represented, and to that extent the issues and arguments now before the Court do not necessarily reflect the most comprehensive range of relevant perspectives nor the broadest productive articulation of the competing interests in contention. In this context, the perspectives of an entity as uniquely positioned as Cuban Electric could prove helpful to the Court in shedding light on those aspects of the case that the immediate parties may not be best situated to address.

*Weininger* Dkt. 139 at 3.

These same principles are applicable here. The motivated perspective of *amici* can further elucidate for the Court essential jurisdictional issues.

6

## CONCLUSION

For the foregoing reasons, the Joint Taliban Creditors respectfully ask the Court to grant them leave to file the attached *amicus* brief.

Dated: March 24, 2023

/s/ Lee Wolosky
Lee Wolosky
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1628
lwolosky@jenner.com

Douglass A. Mitchell
JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001
(202) 639-6090
dmitchell@jenner.com

*Counsel for the Havlish Creditors, Plaintiffs in No. 03-CV-9848 (S.D.N.Y.)*

/s/ Orlando do Campo
Orlando do Campo
John Thornton
DO CAMPO & THORNTON, P.A.
150 S.E. 2nd Avenue, Ste. 602
Miami, FL 33131
(305) 358-6600
od@dandtlaw.com

*Counsel for Judgment Creditors John Does 1-7, Plaintiffs in No. 20-mc-740 (S.D.N.Y.)*

/s/ John B. Galligan, Esq.
John B. Galligan, Esq.
COZEN O'CONNOR
3 WTC
175 Greenwich St., 55th Floor
New York, NY 10007
Tel: (212) 908-1276
jgalligan@cozen.com

*Counsel for Judgment Creditors Federal Insurance Co., et al., Plaintiffs in No. 03-cv-6978 (S.D.N.Y.)*

/s/ James Edwin Beasley
James Edwin Beasley
The Beasley Firm, LLC
1125 Walnut Street
Philadelphia, PA 19107
(215)-592-1000
jbj@beasleyfirm.com

*Counsel for Judgment Creditors Estate of Smith, et al., Plaintiffs in No. 01-cv-10132 (S.D.N.Y.)*