```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

PRUDENCE BUSHNELL, et al.,

                Plaintiffs,            New York, N.Y.

          v.                           22 Civ. 8901 (JSR)

THE ISLAMIC EMIRATE OF
AFGHANISTAN, et al.,

                Defendants.

------------------------------x        Conference

                                       March 29, 2023
                                       10:00 a.m.

Before:

                    HON. JED S. RAKOFF,

                                       District Judge



                         APPEARANCES


MILLER DELLAFERA PLC
    Attorneys for Plaintiffs
BY:  THOMAS DELLAFERA, JR.
         -and-
MM – LAW LLC
    Attorneys for Plaintiffs
BY:  GAVRIEL MAIRON , appearing telephonically


ALSO PRESENT:

JENNER & BLOCK LLP
     Attorneys for Havlish Creditors
BY:  DOUGLASS MITCHELL
        BENJAMIN ALTER
```

1                    (Case called)
2              THE DEPUTY CLERK:  Will everyone please be seated and
3    will the parties please identify themselves for the record.
4              MR. DELLAFERA:  Good morning, your Honor.  This is Tom
5    Dellafera on behalf of the plaintiffs.
6              THE DEPUTY CLERK:  Please pull that microphone closer
7    to you, sir.
8              MR. DELLAFERA:  Tom Dellafera on behalf of the
9    plaintiffs.
10             MR. MAIRONE:  Good morning.  This is Gavriel Mairone
11   on behalf of the plaintiffs, attending via teleconference.
12             THE COURT:  Good morning.
13             So I've received a useful, very useful *amicus* brief
14   from the joint Taliban creditors.  Is counsel present here in
15   the courtroom representing those folks?
16             MR. MITCHELL:  Your Honor, Doug Mitchell on behalf of
17   at least the Havlish creditors of the joint creditors.
18             THE COURT:  Why don't you take a seat at defense
19   table, not that you're representing the defendants.  And I see
20   you have a colleague.
21             MR. MITCHELL:  My colleague Ben Alter is also
22   appearing today, your Honor.
23             THE COURT:  You can both have a seat.
24             So, I think the situation demonstrates why the
25   adversary system doesn't really work well when there are no

1    adversaries.
2            So no one has appeared for the defendants, but the
3    *amicus* raises some interesting questions about both this
4    court's jurisdiction and about, in any event, whether a default
5    judgment is premature at this point as to at least some of the
6    defendants.
7            Let me hear from plaintiffs' counsel on that.
8            MR. DELLAFERA:  Certainly, your Honor.  So our
9    position is that the Islamic Emirate of Afghanistan is not in
10   fact the State of Afghanistan.  The Emirate of Afghanistan is a
11   name and alter ego of the Taliban.  They have been calling
12   themselves that prior to the U.S. invasion of Afghanistan.  It
13   is simply an alter ego, it is the hat they wear when they
14   choose to behave like a government entity.
15           It is our position we are not suing the State of
16   Afghanistan, and therefore the Foreign Sovereign Immunities Act
17   is not implicated here.
18           THE COURT:  So, who are all these other folks, like
19   the Taliban -- I'm sorry.  I'm not even sure how to identify
20   this defendant.
21           Let me take a look at the complaint.  There is
22   defendant HQN.
23           MR. DELLAFERA:  I believe those defendants are
24   collectively the Haqqani defendants, your Honor.  I believe it
25   is pronounced Haqqani.

1            THE COURT:  Have you served them?

2            MR. DELLAFERA:  They were served via publication along
3    with the rest of these defendants, your Honor, under the
4    publication order.

5            THE COURT:  And what about defendant AQ?

6            MR. DELLAFERA:  Al Qaeda, your Honor, would have
7    similarly been served via publication.  The Al-Quds newspaper
8    is the most widely read Arabic daily paper on the planet, is my
9    understanding.

10           THE COURT:  I assume you take the same position with
11   respect to defendant Taliban?

12           MR. DELLAFERA:  Yes, your Honor.  Well, they were
13   additionally served via Twitter, since we do have some Twitter
14   accounts associated with that entity.  So they have been served
15   via Twitter as well as publication.

16           THE COURT:  The Islamic Emirate of Afghanistan.

17           MR. DELLAFERA:  Yes, your Honor.  As I mentioned
18   before, it is our position that the IEA is essentially an alter
19   ego of the Taliban.  It is not the State of Afghanistan.

20           THE COURT:  Well, do they not purport to be --

21           MR. DELLAFERA:  They do --

22           THE COURT:  -- now or at relevant times the government
23   of Afghanistan?

24           MR. DELLAFERA:  They purport to be, but they are not
25   recognized by the United States government as the government or

1     the State of Afghanistan.
2             My understanding, your Honor, and I'm not an expert on
3     the history of the governments there, but my understanding is
4     the recognized government is still the Islamic Republic of
5     Afghanistan, which was deposed by the Taliban in I think 2021.
6     That's my understanding.
7             THE COURT:  All right.  What about the defendant DAB?
8             MR. DELLAFERA:  Da Afghanistan Bank was the bank
9     recognized as the central bank during the Islamic Republic of
10    Afghanistan's time in power.  It is our position they operate
11    as a private entity, and they operated as a private entity at
12    the time of the 1998 embassy bombings at issue in this
13    litigation.
14            And with respect to service, they were served via
15    Twitter, via an e-mail they have on their publicly accessible
16    website, as well as by publication.
17            THE COURT:  So, the *amicus* brief suggests that at
18    least the purported government of Afghanistan and the DAB were
19    not properly served.  In the case of the government or
20    purported government, they say you have to go through various
21    provisions set forth in 28 U.S.C. Section 16(a), and the
22    methods were not realized here.
23            But in any event, they say, even assuming that service
24    was valid as to DAB, they have 60 days to respond.
25            What about that?

1    MR. DELLAFERA: So, assuming -- if the Court were to
2 determine that Da Afghanistan Bank was in fact an
3 instrumentality of the State of Afghanistan, the Foreign
4 Sovereign Immunities Act does require 60 days on their summons,
5 in which case my understanding is the DAB would not be in
6 default until April 19.
7    However, we believe that whether or not DAB is a
8 central bank is an issue of fact in this case, and it is
9 something we're prepared to offer expert testimony on through
10 this process.  So -- sorry.
11    THE COURT: Why should I go down that road as to DA
12 Bank at this point, if, let's assume for the sake of argument
13 that they are an instrumentality of the state, an issue I could
14 decide later.  But it's not like they couldn't be served in the
15 manner that you did, at least the *amicus* doesn't contend as to
16 the bank that the service was improper.  Their claim is you
17 can't get default judgment until after 60 days.
18    So why wouldn't, at least to that defendant, the
19 sensible thing to do is to put off default judgment until 60
20 days, and then we would make the determination of, with perhaps
21 an evidentiary hearing, as to what their status was.  Why buy
22 an issue that only requires postponing this hearing for a few
23 weeks.
24    MR. DELLAFERA: Your point is well taken, your Honor.
25    Mr. Mairone, do you have anything to comment on that?

1           MR. MAIRONE:  Thank you.  Yes, we agree with you,
2    Judge.  And actually we wanted to do a -- we want to request a
3    full evidentiary hearing on this issue, and also on the proof
4    of the participation of each of the defendants in the
5    conspiracy.  And we've engaged expert witnesses, especially on
6    the central bank issue, former Treasury employee of 30 years in
7    Treasury, who from the Treasury was a consultant of central
8    banks, including spent over a year in the Afghanistan as the
9    consultant with the DAB.  And also spent over a year in Iraq on
10   the central bank of Iraq.  Which has been a consultant
11   independently through over a dozen central banks around the
12   world.
13          His testimony would be that, both today and at the
14   time, the DAB is not a central bank in the relevant period, and
15   that would not contradict anything going on in the
16   multidistrict litigation before Judge Daniels.  Because there
17   the proceedings that the *amicus* say are engaged in is in
18   personam on a particular bank account.  And that bank account
19   is opened --
20          THE COURT:  Excuse me.  Excuse me.
21          This is the trouble --
22          MR. MAIRONE:  -- the other thing is the *amicus* is
23   contradicting themself because before Judge Daniels, they are
24   claiming that the DAB is a not (unintelligible) they have the
25   Taliban itself.  Which is the same what we're complaining here.

And the Taliban and the Islamic Emirate of Afghanistan are both designated terrorist organizations, not state actors.  And the United Nations continues to recognize the Islamic Republic of Afghanistan, as does every other country in the world, including the United States.  So, there is no inference we are suing the state.  We are suing a terrorist organization which is in control of some territory.

THE COURT:  So, with some reluctance, I granted you the right to appear here today by telephone, even though your co-counsel was here in person.  But the problem with granting appearance by telephone is that I can never interrupt, which I tried to do many minutes ago without success.  So I will hear nothing further from you.

Understood?

MR. MAIRONE:  Yes.  I'm sorry, your Honor.  I didn't hear.  I apologize.

THE COURT:  So, any comments that the -- I keep wanting to say *amici* because there are two lawyers here, but you're only an *amicus*.  You are a two-headed *amicus*.

So any comments you wanted to make?

MR. MITCHELL:  I think I would just reiterate the things we have said in our *amicus* brief, and just maybe two points very quickly.

One is that the Taliban has, as counsel for plaintiffs noted, called itself the Islamic Emirate of Afghanistan for

many years, and it calls itself that.  So that's its name for itself.  But shortly after taking over the State of Afghanistan in August of 2021, the Taliban changed the name of the State of Afghanistan from the Islamic Republic of Afghanistan to the Islamic Emirate of Afghanistan, and thus there is a little confusion, at a minimum, in plaintiffs' complaint about who they're actually suing, since they have named both the Islamic Emirate and the Taliban as separate entities.

The second issue with respect to the status of Da Afghanistan Bank, as we noted in our *amicus* brief, the President of the United States has recognized, formally recognized Da Afghanistan Bank as the central bank of Afghanistan in his February 2022 Executive Order.  The White House has recognized it in the fact sheet that accompanied that.  The Department of Justice has recognized it in multiple filings with various district courts, both in our case, the *Havlish* case in the 9/11 MDL, and a case called *Faulkner*.

THE COURT:  We can deal with that in due course.  But your view is they were properly served.  At least I thought that was your view.

MR. MITCHELL:  If, I think as we noted, under the FSIA, if the Islamic Emirate is the State of Afghanistan or is found to be the State of Afghanistan, and Da Afghanistan Bank is determined to be the central bank of Afghanistan, then the state has to be served under 28 U.S.C. 1608(a).

1          THE COURT:  So you are saying only if it's not that,
2    was service proper on the bank.
3          MR. MITCHELL:  Correct.
4          THE COURT:  Okay.  Now some of these issues were up on
5    appeal in your case, right?
6          MR. MITCHELL:  They are, your Honor.
7          THE COURT:  What's the status of that appeal?
8          MR. MITCHELL:  We will be filing a case management
9    plan with the Second Circuit this week.  The Second Circuit has
10   taken the appeals from the four different groups who are the
11   joint Taliban creditors.  They are being consolidated into one
12   case.  And we anticipate our opening brief will be filed some
13   time in May or June.  And so things are proceeding apace.
14         THE COURT:  Well, at least by Second Circuit
15   standards.
16         MR. MITCHELL:  By Second Circuit standards, your
17   Honor.
18         THE COURT:  So let me ask plaintiffs' counsel.  While
19   I very rarely put off a case while an issue raised by the case
20   is on appeal to the Second Circuit, or, for that matter, the
21   Supreme Court, because I've learned from experience that often
22   the court doesn't reach the issue in the end for one reason or
23   another.
24         Nevertheless, in this case, where the issues seem to
25   be important for your case as well, and where my suspicion is

1  that, other than the money that was seized by the President or
2  seized by the United States, there is no other assets out there
3  that you're imminently trying to reach.  You might ultimately
4  want to reach other assets, but not like in the next few
5  months.
6           Maybe this is the rare case where I should put this
7  matter on hold until the Second Circuit makes its decision.
8           What do you think?
9           MR. DELLAFERA:  Well, your Honor, we would disagree.
10 The -- what would be beneficial I think if the Court is
11 inclined to hold off on the issue of the central bank and
12 whether or not DAB is a central bank.  There are still very
13 important issues with respect to the liability of the Taliban
14 and the other defendants in this case.  So, what we could do is
15 if --
16          THE COURT:  They're not contesting, so you are going
17 to, assuming I have jurisdiction and assuming they have been
18 properly served, you are going to get default judgment.  Other
19 than some inquiries that I might make along the lines that your
20 colleague was referencing to make sure that I have, at least in
21 my view, jurisdiction.
22          But on the merits, so to speak, if there is a default
23 judgment, all you have to do is make out a prima facie case.
24 It doesn't become the source of adversary proceedings in the
25 normal way.

1           MR. DELLAFERA:  Certainly true, your Honor.  However,
2    there's a question of our ability to prove liability.  The fact
3    that these defendants did in fact commit or contribute to these
4    bombings.  And then there is the issue of the actual
5    enforcement, which is the question about the central bank.  So,
6    while the --
7           THE COURT:  I'm sorry.  Assuming you got default
8    judgment against all these defendants, what are you going to do
9    with that judgment?
10          MR. DELLAFERA:  Well, your Honor, if we have the
11   default judgment against the Taliban, we would be in a position
12   to hold that judgment until the question regarding the central
13   bank is resolved, or rather, until there is an appellate
14   decision.
15          THE COURT:  My question is, what moneys, if any, have
16   you identified, other than the moneys that are also the subject
17   of the other suit?
18          MR. DELLAFERA:  To my knowledge, we have not
19   identified any other Taliban funds, aside from those identified
20   in the Federal Reserve.
21          THE COURT:  Let me ask *amicus* counsel, why haven't you
22   sought to intervene?
23          MR. MITCHELL:  We considered that, your Honor.  And if
24   the Court is inclined, we're happy to do that.
25          THE COURT:  I don't have inclinations.  I'm a judge.

1           MR. MITCHELL:  Well, I'll put it this way, your Honor.
2    We're happy to intervene in this case.  We felt *amicus* was a
3    more natural status for us.
4           THE COURT:  I think it would be helpful to the Court
5    for you to intervene.
6           You can, of course, on the plaintiffs' side, oppose
7    such intervention.
8           But why don't you make a motion to intervene.  How
9    quickly can you make that motion?
10          MR. MITCHELL:  Two weeks, your Honor.
11          THE COURT:  Okay.  Let's see.  That would be -- today
12   is the 29th.  So that would be April 12th.
13          Plaintiffs' counsel, you may not know the answer to
14   this.  Are you inclined to oppose that motion?
15          MR. DELLAFERA:  Yes, we would be inclined to oppose
16   that motion, your Honor.
17          THE COURT:  How long do you want for your answering
18   papers?
19          MR. DELLAFERA:  I'll say two or three weeks, your
20   Honor.
21          THE COURT:  Well, two weeks I think is right.  So that
22   would be April 26.  Reply papers one week, May 3.  Then I will
23   decide that motion by at least bottom line order by no later
24   than May 10.  I don't think I need to have oral argument.  Just
25   rule on the papers.

1           Then we'll have a renewed default hearing/evidentiary
2   hearing, which may or may not involve presentations by the
3   would-be intervenor, depending whether I grant your
4   intervention motion.  And I would suggest, let's take a look at
5   May 17.
6           THE DEPUTY CLERK:  May 17, a Wednesday, we have a
7   criminal trial, two of them.  But nothing else.
8           THE COURT:  Only two.
9           THE DEPUTY CLERK:  Yes.
10          THE COURT:  Slow day.  All right.  How about Monday
11  the 22nd?
12          THE DEPUTY CLERK:  Monday the 22nd, one jury trial
13  with a 4 o'clock argument.
14          THE COURT:  Let me ask counsel, does Friday
15  afternoon -- going back to Friday the 19th.  Does that present
16  a religious problem for anyone?
17          MR. DELLAFERA:  No, your Honor.
18          MR. MITCHELL:  No, your Honor.
19          THE COURT:  So, let's do Friday, May 19, at 2 p.m.
20          THE DEPUTY CLERK:  You do have a criminal
21  conference -- you said 2?  Great.
22          THE COURT:  2 p.m.  And if the jury is still sitting,
23  we'll just excuse them early on that Friday.
24          So, you'll know before then whether the intervenor is
25  in or out.  But this would at a minimum be your evidentiary

1    hearing as already outlined, and then any evidentiary addition
2    or participation that you wanted on the intervenor side would
3    also be on that day.  So I'll keep the calendar clear for the
4    entire afternoon on that day.
5              MR. MITCHELL:  Thank you, your Honor.
6              THE COURT:  Okay.  So I think where we leave the
7    pending motions is they are postponed until the day of the
8    hearing.
9              Anything else we need to take up today?
10             MR. DELLAFERA:  Just a quick clarification, by
11   evidentiary hearing, you said a renewed default hearing with
12   evidentiary hearing.
13             THE COURT:  To determine whether these are
14   instrumentalities of the state.  Was there something else you
15   wanted to -- your colleague -- and I apologize since he's been
16   rendered moot by court order -- seemed to contemplate the
17   history of the world.  But I think it's a somewhat more narrow
18   issue than that.
19             MR. DELLAFERA:  Well, your Honor, the argument that it
20   is a central bank, that DAB is a central bank, we have spoken
21   with an expert witness.  And if we were to try to make an
22   argument such as the one my colleague contemplates, it would
23   take probably a few more months to prepare that expert opinion.
24             THE COURT:  You've got from now until May.  That's
25   several months, last I checked.

|   |   |
|---|---|
| 1 | MR. DELLAFERA:  Our expert witness that we spoke with |
| 2 | I believe said he wouldn't have a rough draft until August. |
| 3 | THE COURT:  Well, then, that's too bad, because then |
| 4 | you won't present him at the evidentiary hearing because I'll |
| 5 | be darned if I am going to wait for someone who can't get his |
| 6 | act together until August. |
| 7 | MR. DELLAFERA:  All right, your Honor. |
| 8 | THE COURT:  Anything else we need to take up today? |
| 9 | Very good.  Thanks a lot. |
| 10 | MR. DELLAFERA:  Thank you, your Honor. |
| 11 | (Adjourned) |